**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 16-20088-JAR** |
| **ALFRED B. REECE,** | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Alfred B. Reece's Motion for Compassionate Release (Doc. 37) under section 3582(c) of the First Step Act ("FSA"). Reece, who tested positive for COVID-19 on May 19, 2020, and has apparently recovered, nevertheless seeks release on grounds that the virus presents a serious risk to his overall health. The government opposes Reece's request. For the reasons set forth in detail below, the Court concludes that Reece has not made a sufficient showing of extraordinary and compelling reasons to grant a sentence reduction under § 3582(c) and denies his motion.

## I.     Background

On October 20, 2017, Reece pleaded guilty to four counts of Aiding and Assisting in the Preparation of a False Income Tax Return in violation of 26 U.S.C. § 7206(2).[1] This Court sentenced Reece to 96 months' imprisonment and a one-year term of supervised release.[2] On

---

[1] Docs. 20, 21.

[2] Doc. 27.

August 21, 2018, the Tenth Circuit Court of Appeals dismissed Reece's direct appeal as untimely.[3]  On August 20, 2018, Reece filed a Motion to Reduce Sentence under 18 U.S.C. § 3553(b)(1), which this Court dismissed for lack of jurisdiction.[4]

Reece currently is serving his sentence at Federal Correction Institution ("FCI") Oakdale I in Louisiana.  He is sixty-one years old and his projected release date from the Bureau of Prisons ("BOP") is May 5, 2025.  As of July 13, 2020, the BOP reports that FCI Oakdale I has 177 confirmed cases of COVID-19.[5]  The BOP further reports that 891 tests have been completed and 0 tests are pending.

On May 18, 2020, Reece filed a *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  He lists seven Oakdale inmates who have died of the COVID-19 virus, including inmates who lived in the same housing unit as Reece.  After Reece tested positive for COVID-19 on May 19, 2020, the government moved to stay briefing on the motion for thirty days while he recovered.[6]  At that time, Reece was asymptomatic and otherwise isolated from the inmate population.  The Federal Public Defender ("FPD") entered an appearance for Reece pursuant to Standing Order 19-1 on May 20, 2020.[7]  According to the medical records that have been produced in this case, as supplemented on June 28, 2020, Reece has been diagnosed with chronic kidney disease and hypertension.  Thankfully, there is no report that Reece has suffered any complications from his positive COVID-19 diagnosis.

---

[3] Doc. 34.

[4] Doc. 36.

[5] Federal Bureau of Prisons, *COVID-19 Coronavirus: COVID-19 Cases*, https://www.bop.gov/coronavirus/index.jsp (last accessed July 13, 2020).

[6] Doc. 43.

[7] Doc. 44.

Reece requests the Court to reduce his term of imprisonment to time served and increase his term of supervision to three years. The United States Probation Office has verified and approved his release plan to reside with his wife of thirty-two years in Olathe, Kansas. The government opposes Reece's motion, contending that he has failed to establish extraordinary and compelling reasons for compassionate release.

## II.  Legal Standards

"[I]t is well-settled that '[a] district court is authorized to modify a [d]efendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so.'"[8] Section 3582(c) permits a court to modify a term of imprisonment for compassionate release only if certain exceptions apply. Until recently, these exceptions required the BOP to move on a defendant's behalf. In 2018, however, the FSA modified the compassionate release statute, permitting a defendant to bring his own motion for relief.[9] Since then, a defendant may bring a motion for compassionate release from custody only if he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. . . ."[10] Unless a defendant meets this exhaustion requirement, the court lacks jurisdiction to modify the sentence or grant relief.[11]

Where a defendant has satisfied the exhaustion requirement, a court may reduce the defendant's sentence, after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent

---

[8] *United States v. White*, 765 F.3d 1240, 1244 (10th Cir. 2014) (quoting *United States v. Blackwell,* 81 F.3d 945, 947 (10th Cir. 1996)).

[9] First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018).

[10] 18 U.S.C. § 3582(c)(1)(A).

[11] *United States v. Johnson*, 766 F. App'x 648, 650 (10th Cir. 2019) (holding that without an express statutory authorization, a court lacks jurisdiction to modify a sentence).

they are applicable, if the court determines: (1) "extraordinary and compelling reasons warrant such a reduction"; or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c) . . . and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community."[12]   In addition, a court must ensure that any reduction in a defendant's sentence under this statute is "consistent with applicable policy statements issued by the Sentencing Commission."[13]

The FSA does not itself define what constitutes "extraordinary and compelling reasons" to justify a reduction in sentence.  28 U.S.C. § 994(t) provides that "[t]he [Sentencing] Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(a)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criterial to be applied and a list of specific examples."  That policy statement is found at U.S.S.G. § 1B1.13.

The Sentencing Commission's comments to § 1B1.13 set forth four circumstances under which extraordinary and compelling reasons may exist: (1) the defendant is suffering from a terminal illness, i.e., a serious, advanced illness with an end-of-life trajectory; (2) the defendant is suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which the defendant is not expected to recover; (3) the

---

[12] 18 U.S.C. § 3582(c)(1)(A).

[13] *Id.*; *see also Dillon v. United States*, 560 U.S. 817, 819 (2010) (holding the Sentencing Commission policy statement regarding 18 U.S.C. § 3582(c)(2) remains mandatory in the wake of *United States v. Booker*, 543 U.S. 220 (2005)).

defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least ten years or seventy-five percent of the term of imprisonment, whichever is less; (4) the defendant needs to serve as a caregiver for a minor child, spouse, or registered partner.[14]

Reece's age and family circumstances are not applicable here, and he does not argue that he can satisfy any of the qualifying medical conditions.  Instead, he invokes subdivision (D),  the so-called "catchall" provision included in § 1B1.13, which provides that extraordinary and compelling reasons "other than, or in combination with," the four listed may be sufficient to warrant relief, as determined by the Director of the BOP.[15]  The BOP has published a Program Statement identifying "several nonexclusive factors to determine whether 'other' extraordinary and compelling reasons exist:  the defendant's criminal and personal history, nature of his offense, disciplinary infractions, length of sentence and amount of time served, current age and time of offense and sentencing, release plans, and '[w]hether release would minimize the severity of the offense.'"[16]  As a "permissible construction of the statute," the BOP's Program Statement is "entitled to some deference."[17]

The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and BOP employees from COVID-19.  The DOJ recently adopted the position that an inmate who presents with one of the risk factors identified by the Centers for Disease Control and Prevention ("CDC") should be considered as having an "extraordinary and compelling reason" warranting a

---

[14] U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1 (A) through (C) (U.S. Sentencing Comm'n 2018).

[15] *Id.*

[16] *United States v. Saldana*, ---F. App'x---, 2020 WL 1486892, at *2 (quoting BOP Program Statement 5050.50 at 12 (2019)).

[17] *Id.* at *3 (citing *Reno v. Koray*, 515 U.S. 50, 61 (1995)).

sentence reduction.[18]  Nevertheless, the government argues only the BOP may rely on the

catchall provision, and that courts may not make their own determination.  The Court disagrees.

On its face, the catchall category applies only if the Director of the BOP seeks

compassionate release on a defendant's behalf.[19]  As Reece notes, however, this policy statement

has not been updated to account for the changes to § 3582(c)(1)(A) enacted through the FSA and

is thus "now clearly outdated."[20]  The Sentencing Commission, currently lacking a quorum, has

yet to update § 1B1.13 since Congress amended § 3582(c)(1)(A).  The policy statement still

contemplates a motion for compassionate release originating solely from the BOP Director,

which is clearly no longer the case.  Accordingly, "a growing consensus of courts across the

country have concluded that, after the First Step Act, the Commission's policy statement 'does

not constrain a court's independent assessment of whether 'extraordinary and compelling

reasons' warrant a sentence reduction under § 3852(c)(1)(A).'"[21]

In the District of Kansas, Judge Lungstrum recently rejected the reasoning that the FSA

did not expand the criteria for finding what constitutes an extraordinary and compelling reason

beyond what the Sentencing Commission mandates in subdivisions (A) through (C) of § 1B1.13

and instead concluded that a court may make the necessary determination that other

circumstances warrant relief under § 3582(c)(1)(A).[22]  Judge Marten previously adopted the

---

[18] *See, e.g., United States v. Martin*, No. DKC 04-0235-5, 2020 WL 3447760, at *2 (D. Md. June 24, 2020); *see also* U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1(A)(i)(I) (U.S. Sentencing Comm'n 2018).

[19] U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1(A)(ii)(I) (U.S. Sentencing Comm'n 2018).

[20] *United States v. Rodriguez*, No. 2:03-cr-00271-AB-1, 2020 WL 1627331, at *3 (E.D. Pa. Apr. 1, 2020).

[21] *United States v. Somerville*, No. 2:12-CR-225-NR, 2020 WL 2781585, at *6 (W.D. Pa. May 29, 2020) (quoting *Rodriguez*, 2020 WL 1627331, at *3–4) (collecting cases).

[22] *United States v. Jackson*, No. 08-20150-02-JWL, 2020 WL 2812764, at *3 (D. Kan. May 29, 2020).

majority position in motions for compassionate release that were not COVID-19 related.[23]  This Court has likewise joined the majority of courts finding that it has the authority to independently assess whether there are extraordinary and compelling reasons to reduce a defendant's sentence on COVID-19 grounds;[24] Judge Crabtree has also joined the prevailing view.[25]  The Court reaffirms that position and remains persuaded by the reasoning of those courts in the clear majority.[26]  Indeed, "[i]t would undermine the change made by Congress in the [Fist Step Act] if . . . the catchall provision did not also apply in the case of a motion by a defendant."[27] Therefore, the Court finds that it is not limited to consideration of the circumstances set forth in subdivisions (A) through (C) in § 1B1.13.  Although the Guideline provides helpful guidance on what constitutes extraordinary and compelling reasons, it is not conclusive given the recent statutory changes.

## III.    Discussion

### A.    Exhaustion

Reece has satisfied the exhaustion requirement described in § 3582(c).  Reece submitted a written form to the Warden at FCI Oakdale on April 11, 2020 requesting compassionate release.  To date, Reece has not received any response from the Warden.  The government does

---

[23] *United States v. O'Bryan*, No. 96-10076-JTM, 2020 WL 869475, at *2 (D. Kan. Feb. 21, 2020); *United States v. Perez*, No. 88-10094-JTM, 2020 WL 1180719, at *2–3 (D. Kan. Mar. 11, 2020).

[24] *United States v. Lavy*, No. 17-20033-JAR, 2020 WL 3218110, at *3 (D. Kan. June 15, 2020).

[25] *United States v. Younger*, No. 16-40012-02-DDC, 2020 WL 3429490, at *5 (D. Kan. June 23, 2020) (collecting cases).

[26] *Id.; Somerville*, 2020 WL 2781585, at *6; *United States v. Jenkins*, No. 99-439-JLK, 2020 WL 2466911, at *5 (D. Colo. May 8, 2020); *United States v. Redd*, No. 97-006-AJT, 2020 WL 1248493, at *6–8  & n.18 (E.D. Va. Mar. 16, 2020); *United States v. Maumau*, No. 2:08-cr-00758-TC-11, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020) ("[T]his court joins the majority of other district courts that have addressed this issue in concluding that it has the discretion to provide [the defendant] with relief, even if his situation does not directly fall within the Sentencing Commission's current policy statement."), *appeal filed* (10th Cir. May 12, 2020).

[27] *Jackson*, 2020 WL 2812764, at *3.

not dispute that Reece has satisfied the applicable exhaustion requirement.  Thus, because more

than thirty days have passed, this Court has jurisdiction to decide Reece's motion.[28]

      **B.**      **Extraordinary and Compelling Circumstances**

Reece argues that the existing COVID-19 pandemic and his particular vulnerability to

contracting a severe illness if infected constitute an extraordinary, compelling reason to grant

compassionate release.  Reece notes COVID-19 is spreading at an alarming rate throughout FCI

Oakdale I, and that because of his age and underlying medical conditions, he is particularly

vulnerable to the effects of COVID-19, which he has now contracted.  The government

acknowledges that if an inmate has a chronic medical condition that has been identified by the

CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition

may satisfy the standard of "extraordinary and compelling reasons."  The government contends,

however, that Reece's underlying medical conditions fall short of establishing the level of

severity required under the policy statement and that COVID-19 has had no impact on his overall

health.

With respect to motions brought during the current pandemic, "[c]ourts around the

country have granted compassionate release where the defendant suffers from a serious condition

that increases the likelihood of severe consequences from COVID-19."[29]  The Court is mindful

that while "the mere presence of COVID-19 in a particular prison cannot justify compassionate

release,"[30] "[m]ost, though not all, of the cases where compassionate release has been granted

also involv[e] some showing that COVID-19 is actually present, usually to a significant degree,

---

[28] *See United States v. Boyles*, No. 18-20092-JAR, 2020 WL 1819887, at *2 (D. Kan. Apr. 10, 2020) (holding that if a criminal defendant fails to meet the First Step Act's exhaustion requirement, the Court lacks jurisdiction over the motion).

[29] *Somerville*, 2020 WL 2781585, at *7 (collecting cases).

[30] *United States v. Seymon*, No. 11-10040, 2020 WL 2468762, at *4 (C.D. Ill. May 13, 2020).

in the facility where the prisoner is incarcerated."[31]  By contrast, courts often deny compassionate release motions "where prisoners articulate only generalized or speculative fear about the risk of infection, without any showing of serious medical vulnerability or uncontrolled exposure risk in the prison where they are held."[32]

In this case, Reece cites multiple medical conditions as creating a heightened risk for severe complications from COVID-19, including his age, hypertension, transient ischemic attacks ("TIAs"), and chronic kidney disease.  Reece is a sixty-one year-old African American male.  Data gathered by the CDC shows that individuals between 50 and 64 years old are hospitalized at a much higher rate than that of younger adults, and that eight out of ten COVID-19 deaths in the United States have been in adults 65 years old and older.[33]  The latest statistics from the CDC also indicate that non-Hispanic black persons have a rate of infection that is approximately five times that of non-Hispanic white persons.[34]

---

[31] *Somerville*, 2020 WL 2781585, at *7; *see also United States v. Gorai*, No. 2:18-CR-220 JCM, 2020 WL 1975372, at *2 (D. Nev. Apr. 24, 2020) ("To make matters worse, defendant notes that '[o]n April 16, 2020, the count at Lompoc USP, now leading the BOP in inflicted inmates and staff, had 69 inmates and 22 staff testing positive.'  Even those numbers may be underrepresentative because only inmates with symptoms are tested."); *United States v. Cassidy*, No. 17-CR-116S, 2020 WL 2465078, at *7 (W.D.N.Y. May 13, 2020) ("Here, however, [the defendant] demonstrates more than just a general possibility that he could contract COVID-19. [ . . . ]  He demonstrates incarceration in a proven 'hotbed' facility that has numerous positive cases, including inmates with whom [the defendant] has shared quarters.").

[32] *Somerville*, 2020 WL 2781585, at *8 (citing *United States v. Canada*, No. 119-014, 2020 WL 2449344, at *1 (S.D. Ga. May 12, 2020)); *United States v. Brooks*, No. 07-cr-20047-JES-DGB, 2020 WL 2509107, at *5 (C.D. Ill. May 15, 2020); *United States v. Gagne*, ---F. Supp. 3d---, 2020 WL 1640152, at *5 (D. Conn. Apr. 2, 2020)).

[33] CDC, *COVIDView*, https://www.cdc.gov/coronavirus/2019-ncov/covid-data/covidview/index.html (last accessed July 9, 2020).

[34] CDC, *Corona Virus Disease 2019 (COVID-19):Racial and Ethnic Minority Groups*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/racial-ethnic-minorities.html (last accessed July 9, 2020).

Regarding Reece's hypertension, the CDC has not determined whether hypertension alone renders an individual particularly vulnerable to severe illness stemming from COVID-19;[35] however, in its most recent guidance, the CDC added hypertension to its list of conditions that may increase an individual's risk of severe illness from COVID-19.[36]  Additionally, in multiple studies of patients with COVID-19, most patients who died had at least one comorbidity. Among the comorbidities, hypertension appeared frequently, indicated a strong relationship between hypertension and a patient's likelihood of developing a severe illness from COVID-19.[37]

Reece also reportedly experiences TIAs, which are cardiac events resembling strokes.[38] TIAs occur when an individual has a short-term blockage or blood clot near the brain.[39] Although the CDC has not yet determined whether TIAs increase an individual's risk for severe illness resulting from COVID-19, the CDC has concluded that cardiovascular or cerebrovascular issues, including strokes, may increase an individual's risk.[40]

---

[35] CDC, *Clinical Questions about COVID-19: Questions and Answers, Patients with Hypertension*, https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html#Patients-with-Hypertension (last accessed July 9, 2020).

[36] CDC, *Coronavirus Disease 2019 (COVID-19): People of Any Age with Underlying Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#liver-disease (last accessed July 9, 2020).

[37] JAMA Internal Medicine, *Risk Factors Associated with Acute Respiratory Distress Syndrome and Death in Patients with Coronavirus Disease 2019 Pnuemonia in Wuhan, China*, https://jamanetwork.com/journals/jamaint ernalmedicine/fullarticle/2763184 (Mar. 13, 2020) (in a study of 201 infected patients, 84 developed acute respiratory distress syndrome (ARDS), and of those 84 with ARDS, 23 had hypertension compared to just 16 of 117 with hypertension who did not develop ARDS); The Lancet, *Are Patients with Hypertension and Diabetes Mullitus at Increased Risk for COVID-19 Infection?*, https://www.thelancet.com/journals/lanres/article/PIIS2213-2600(20)30116-8/fulltex (Mar. 11, 2020) (concluding that the most frequent comorbidities of patients with COVID-19 were diabetes, hypertension, and cerebrovascular disease).

[38] Mayo Clinic, *Diseases & Conditions: Transient Ischemic Attack (TIA)*, https://www.mayoclinic.org/disea ses-conditions/transient-ischemic-attack/symptoms-causes/syc-20355679 (last accessed July 9, 2020).

[39] *Id.*

[40] CDC, *Coronavirus Disease 2019 (COVID-19): People of Any Age with Underlying Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#liver-disease (last accessed July 9, 2020).

Finally, Reece has supplemented his motion to address the recent changes in CDC guidance that address chronic kidney disease as an underlying condition for serious complications with COVID-19.   On June 25, 2020, the CDC added chronic kidney disease to the list of conditions that place people of any age at an increases risk of severe illness from COVID-19.[41]

Even exercising its independent assessment authority to find extraordinary and compelling reasons, the Court finds that Reece does not meet the burden to demonstrate that such reasons exist here.  As noted, Reece tested positive for COVID-19 on May 19, 2020 while his motion was pending.[42]  Significantly, Reece has not reported any medical complications or symptoms related to COVID-19 in the weeks since his test results came back.  This information raises two issues.  First, the fact that Reece tested positive on May 19 and has not exhibited any reported symptoms mitigates his stated concerns that he would develop severe complications if infected.  Second, based on current scientific and medical information, the Court cannot determine the likelihood that Reece could be re-infected.  Individuals infected by certain other viruses have some degree of immunity against future infection, though the strength and length of immunity varies based on the virus and the individual.[43]  Though the Court recognizes that information regarding COVID-19 is still rapidly developing, there appears to be evidence suggesting recovery from COVID-19 confers some level of immunity against re-infection.[44]  The

---

[41] *See* CDC, *Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions,* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed July 9, 2020).

[42] Doc. 43-1 at 1.

[43] *See* Thomas J. Braciale & Young S. Hahn, *Immunity to Viruses*, Immunological Reviews at 5, available at https://doi.org/10.111/imr.12109 (last accessed July 9, 2020); *see also* Taiki Aoshi, *et al.*, *Innate and Adaptive Immune Responses to Viral Infection and Vaccination*, Current Opinion in Virology at 226, available at https://doi.org/10.1016/j.coviro.2011.07.002 (last accessed July 9, 2020).

[44] *See, e.g.*, Robert D. Kirkcaldy, *et al.*, *COVID-19, Postinfection Immunity Limited Evidence, Many Remaining Questions*, J. of the Am. Medical Ass'n, at 2246, available at https://jamanetwork.com/journals/jama/full

Court is not in a position to make definitive conclusions about immunity to COVID-19, but Reece's lack of complications after testing positive and the possibility of developing some degree of immunity cannot be ignored in consideration of whether there are extraordinary and compelling reasons warranting a reduction in Reece's sentence.[45] Thus, in light of Reece's apparent recovery and the fact that he does not dispute that he remains asymptomatic and does not point to any current health problems as a result of having contracted COVID-19, the Court finds extraordinary and compelling reasons do not exist to warrant a sentence reduction under § 3582(c)(1)(A).

### C.      Section 3553(a) Factors

The Court's conclusion is buttressed by a consideration of the applicable § 3553(a) factors.  Without question, it is regrettable that Reece contracted the COVID-19 virus while designated to a BOP facility hit hard by the pandemic.  The Court is not convinced, however,

---

article/2766097 ("[E]xisting limited data on antibody responses to SARS-CoV-2 and related coronaviruses, as well as one small animal model study, suggest that recovery from COVID-19 might confer immunity against reinfection, at least temporarily.  However, the immune response to COVID-19 is not yet fully understood and definitive data on postinfection immunity are lacking.") (last accessed July 9, 2020); *see also* Francis Collins, *NIH Director's Blog: Study Finds Nearly Everyone Who Recovers From COVID-19 Makes Coronavirus Antibodies*, available at https://directorsblog.nih.gov/ 2020/05/07/study-finds-nearly-everyone-who-recovers-from-covid-19-makes-coronavirus-antibodies ("Although more follow-up work is needed to determine just how protective these antibodies are and for how long, these findings suggest that the immune systems of people who survive COVID-19 have been primed to recognize SARS-CoV-2 and possibly thwart a second infection.") (last accessed July 9, 2020).

[45] Many other courts nationwide have taken a similar approach to factoring the diagnosis of and recovery from COVID-19 when evaluating motions for compassionate release.  *See United States v. Reynolds*, No. 2:18-131, 2020 WL 3266532 (W.D. Wa. June 17, 2020) (noting that because the defendant's "last medical report indicates that he is currently receiving medication for his other health concerns and is not suffering from any reported lingering symptoms from COVID-19," the defendant's "circumstances do not provide a basis to reduce his sentence or grant his request for compassionate release."); *United States v. Johnson*, No. 12-20056, 2020 WL 2573239 (C.D. Ill. May 21, 2020) ("Because Defendant Johnson appears to have already contracted COVID-19 and recovered without incident, the risk of him suffering severe complications from the virus is significantly diminished compared to others in the BOP who have either not contracted the virus or who have contracted the virus and exhibited severe symptoms or complications."); *United States v. Garciduenas-Escamilla*, No. 3:19-4899, 2020 WL 2306606 (S.D. Cal. May 8, 2020) (holding that "because the Defendant is still recovering from COVID-19, he could pose a danger to the community if he were released," and denying the defendant's motion to revoke his detention order).  *But see United States v. Sholler*, No. 17-181, 2020 WL 2512416 (N.D. Cal. May 15, 2020) (granting compassionate release because, even though Defendant tested positive for COVID-19 nearly a month prior to the court's ruling and had received appropriate medical care, he remained "especially vulnerable to severe illness from COVID-19 due to his age and numerous pre-existing conditions," including poorly-controlled Parkinson's disease).

that the conditions he finds himself in qualify him for release after serving approximately one-third of his sentence.  The Court must still consider (1) the defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offenses; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentence disparities among similarly-situated defendants.[46]

Application of the § 3553(a) factors here militates against reducing Reece's sentence to time-served.  Reece pleaded guilty to a serious, albeit non-violent, felony offense involving the preparation of false income tax returns.  This offense was not Reece's first felony and was committed while he was on probation, resulting in a substantial criminal history category VI classification.[47]  When the Court sentenced Reece, it adhered to the statutory mandate that it impose a sentence that was "not greater than necessary."[48]  Reece received a sufficient but judicious sentence of 96 months' imprisonment—reducing that sentence by nearly two-thirds would produce a sentence that no longer reflects the seriousness of Reece's criminal conduct, nor furnish adequate deterrence to criminal conduct or provide just punishment.  Finally, reducing Reece's sentence to the 30 months he has served would reduce it well below the applicable Guidelines range of 77 to 96 months.[49]  No new fact justifies such a substantial disparity.  The

---

[46] *See* 18 U.S.C. § 3553(a)(1)-(6).

[47] Doc. 22 ¶¶ 71–73.

[48] 18 U.S.C. § 3553(a).

[49] Doc. 22 ¶ 101.

pertinent sentencing factors in § 3553(a) do not favor the reduction Reece seeks and his motion is therefore denied.[50]

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Alfred B. Reece's Motion for Release to Reduce Sentence (Doc. 37) is **denied without prejudice** to refile should his medical condition change or deteriorate.

**IT IS FURTHER ORDERED** that the government's Motion to Stay (Doc. 43) and Reece's Motion to Appoint Counsel (Doc. 48) are **denied as moot.**

**IT IS SO ORDERED.**

Dated: July 13, 2020

> S/ Julie A. Robinson
> JULIE A. ROBINSON
> CHIEF UNITED STATES DISTRICT JUDGE

---

[50] *See United States v. Pawlowski*, ---F. App'x---, 2020 WL 3483740, at *2 (3d Cir. June 26, 2020) (holding district court did not abuse its discretion denying motion for compassionate release based on the amount of time remaining to be served; decision not to reduce defendant's sentence from 15 years to less than two years was not unreasonable after consideration of several of the § 3553(a) factors) (citing cases).